GEORGE J. DODGE vs. S. HASKELL and another, executors.

Waldo. Opinion May 6, 1879.

*Forgery. Burden of proof. Evidence. Instruction.*

The burden of proof is upon the plaintiff to satisfy the jury that an apparent material alteration of the note declared upon was made before delivery. The paper itself may or may not satisfy them. What alteration, or degree, or kind of alteration, may exist without being suspicious enough to require explanation, is a fact for the jury to determine.

A count upon a note, as dated November 23, 1869, may be amended so as to read August 23, 1869, there being but one note and of the latter date.

Where the defense to a note is forgery, it is not admissible to exhibit other writings to show that the alleged forger has committed other forgeries, unless the papers offered present similitudes of the whole or some part of the note in question.

It is admissible to show that a note, the alleged defense to which by a surety is that it was altered by the principal after the surety signed it, was given to the payee by the surety in payment of a similar genuine note between the same parties. Such evidence would be circumstantial and not conclusive.

Where to an action on a promissory note for $2000 the defense is that it has been altered from a note for $200, and the plaintiff offers testimony tending to show that the note in suit was given to renew another for $1900 and interest signed by same persons, an instruction that, if the jury are satisfied that the note in suit was so given, they need proceed no further, provided it was taken in good faith, is erroneous.

ON MOTION AND EXCEPTIONS.

ASSUMPSIT against Going Hathorn, late of Pittsfield, in Somerset County, upon a note signed by him as a surety for one John E. Simons and others. Writ dated March 22, 1875. Note dated August 23, 1869. The writ described the note as bearing date November 23, 1869. Plaintiff's counsel asked leave to amend by changing the date in the count to August 23, 1869. Defendants' counsel objected to the proposed amendment as not legally allowable, because introducing an entirely new and distinct cause of action. Court overruled the objection and allowed plaintiff's counsel to amend as proposed, changing the date from November 23, 1869, to August 23, 1869.

The defense was that the note, when signed by Hathorn, was for $200, and was altered by John E. Simons before delivery

to the plaintiff. That said Simons attempted to alter said note to $2000, but had so mutilated it, in his attempt at alteration, and so changed it, that it did not now read either two hundred or two thousand dollars, or any other intelligible sum, and the defendants' counsel contended that, therefore, no recovery could be had upon it, and that it ought not to be allowed to go to the jury.

The court, however, allowed it to go to the jury.

A report of all evidence is made on a motion for new trial, and the original note and all the original papers used at the trial are to be submitted to the inspection of the full court, on the hearing of these exceptions and of said motion, and said report and original papers and the charge of the court make part of said motion and exceptions, and to be referred to.

The plaintiff called Daniel W. Simons, a brother of said John E. Simons, who testified that he was acquainted with the handwriting of Going Hathorn, and that, in his opinion, the signature on the note was Mr. Hathorn's.

Upon cross examination he testified that his own name appeared, too, on said note, as one of the indorsers; that it was not his genuine signature; that he was well acquainted with the hand-writing of said John E. Simons, his brother, and he had no doubt that his (the witness') name was written on said note by said John E. Simons; that said John E. Simons had no authority or consent from him to sign his name as indorser upon said note.

He also further testified that the signatures of Henry M. Simons, who was also his brother, and of David Simons, who was his father, both of whom appear as makers of the note, were not genuine, but were put on said note by said John E. Simons; that the whole of said note, except the signature of said Hathorn and the printed portion of said note, was in the hand-writing of said John E. Simons.

The witness was then shown the papers mentioned in the stenographer's report and marked from A to Z and also from 1 to 16 inclusive, and stated that the most of them were in the hand-writing of John E. Simons; the hand-writing of a small number he did not recognize. These papers included a large number of notes bearing signatures of the witness, and of Mr. Hathorn, and of

witness' father, brothers and other relatives of John E. Simons, and of third persons, all in said John E. Simons' hand-writing; also notes partly filled up, blank forms for notes partly filled, all in the hand-writing of said John E. Simons, and extending over a period from 1866 to 1870, all of which make part of the original papers to be shown to the full court, as appears by the report of evidence in the case, which is to control.

At the close of the testimony of said Daniel W. Simons, the plaintiff was allowed to read the note in suit to the jury.

The defendants then called Hanover S. Nickerson, who testified that John E. Simons lived in Pittsfield village for several years, prior to June, 1870, and carried on the furniture business in a shop there; that he was often in said shop; that said Simons had a desk in one corner of it where he did his writing; that in the last of June, 1870, said Simons suddenly disappeared from said Pittsfield; that the witness was a deputy sheriff, and that about the time said Simons disappeared a warrant was placed in his hands to arrest said Simons for forgery; that he searched the desk which Simons had occupied, immediately after his disappearance, and found in it notes, notes partly filled up, altered notes, blank notes, bills, letters and a lot of different papers. The witness was then shown the papers marked A to Z, and 1 to 16, and was asked whether he found these, with others, in said Simons' desk at the time of the search aforesaid, immediately after said Simons disappeared. The plaintiff's counsel objected to the inquiry. The defendants' counsel stated that he expected to show by the witness that all these papers were found by him at that time in said Simons' desk. That among them were forged notes, altered notes, notes partly filled up, and blank notes, nearly all of which were upon the same kind of blank as the note in suit, and many of which were evidently experiments by said John E. Simons in altering and forging notes, and would explain precisely how the alteration was made in the note in suit.

The plaintiff's counsel still objected, and the court excluded the question, and the witness was not allowed to state where he found said papers, or anything upon that subject, except as appears in the report.

The defendants' counsel then offered the papers themselves. The court admitted so many of them as contained the words "hundred" or "thousand," in the hand-writing of said John E. Simons, and excluded all the others.

The plaintiff offered depositions of Horace Dodge and Prudence Dodge, for the alleged purpose of showing that George Dodge, the father of the plaintiff, had a $1900 note signed by the same parties, and that the note in suit was a renewal of that note. The defendant objected to the depositions as inadmissible for that purpose, or any other, that they were mere hearsay. Depositions are printed in the report, and are here referred to. The court overruled defendants' objections and admitted certain parts of both depositions which were marked; and the depositions were allowed to go to the jury. No other evidence was offered as to the existence of a previous note, or that the note in suit was a renewal of it. Upon this branch of the case the court instructed the jury as follows : " Then, further, it is claimed by counsel for the plaintiff that there is, at least, one complete answer to the whole defense—a perfect answer. And it is that fraud is not to be presumed ; and that really there was no occasion for perpetrating any fraud ; there was nothing to be gained by the perpetration of the fraud,—the alteration of this note, or forgery—for the reason that this note was given for another note; and that the other note amounted to the same sum that this note was given for. If it was, (it is claimed on the part of counsel) there was no motive whatever.

" If you are satisfied that this note was given for another note, you will proceed no further; if the $2000 note was taken in good faith. Your attention has been called to the evidence upon that branch of the case, going to show that there was an outstanding note signed by the same parties for between $1900 and $2000. All the evidence is for you to consider, and determine whether it warrants the conclusion arrived at by the counsel for the plaintiff, that the $1950 note was taken up and superseded with this note in suit."

At the close of the charge to the jury, the counsel for the plaintiff asked for further instructions as to the burden of proof, and the court further instructed the jury in the following words :

"You must bear in mind the remark that I made in another part of the charge. It is this: that if you should find that the note has been altered since it was written, I instruct you generally that the plaintiff would be required to explain. But instruct you if you find that the note has been altered since it was written, but that it was in the same condition when it was signed as it is now, why then, the explanation—the duty of showing this fact, the alteration and accounting for it, would not devolve upon the plaintiff. So, gentlemen, you will take the case." The jury returned a verdict for the plaintiff for $3,038.

The defendants alleged exceptions.

*D. D. Stewart*, for the defendants.

*J. Baker*, for the plaintiff.

PETERS, J. Where a plaintiff declares upon a note and offers it in evidence against the maker, there is a burden upon him to satisfy the jury that an apparent alteration of the note was made before delivery. This arises from the general burden of proof, which the plaintiff has to sustain, to show that the instrument declared on is the genuine and valid promise of the defendants. Therefore, if there is evidence, each way, upon a question of alteration, the preponderance must be in favor of the plaintiff. The jury are to be satisfied that a note is genuine and not fraudulently altered.

But the paper itself, unaided by other evidence, may satisfy the jury, or it may not. All depends upon circumstances. Alterations are rarely alike. The alteration may be immaterial, or comparatively so, or natural, or beneficial to the maker, or made by the same pen and ink as the body of the instrument, or in the hand-writing of the maker (where one maker), or in that of the witness to the instrument; and in such cases it would not be suspicious. On the other hand, the alteration may present indications of fraud and forgery. Whether it does or not is a question of fact and not of law. It cannot be a question of law to decide whether a note is in two inks or one, or two hand-writings or one, or why so written. It is said that alteration *prima facie* indi-

cates fraud. It is sure that it does not in all cases. On the other hand, it is said that fraud is not to be presumed. But it would be extreme to say that an instrument might not be so altered as to show upon its face the grossest attempt at forgery. Therefore, what alteration or degree or kind of alteration may exist without being suspicious enough to demand explanation, is for the jury to settle. There is no presumption of law, either way. There is much confusion in the cases upon this subject and a great variety of decisions. There can be no difficulty, practically, in the rule as we here state it. It will rarely happen that a case is to be tried without some evidence *aliunde* the note, and it cannot be a matter of much consequence which side proceeds first. *Crabtree* v. *Clark,* 20 Maine, 337. *Boothby* v. *Stanley,* 34 Maine, 515. 2 Washb. Real Prop. 555, and cases.

The note was declared upon as dated November 23, 1869. The date in the count was amended so as to read August 23, 1869. The amendment was allowable. It does, in one sense, permit a new cause of action to be described, but not in the sense that the rule is to be understood. The declaration, amended, describes the note correctly ; unamended, it described it incorrectly. Still, it identified it, there being but one note. *Stevenson* v. *Mudgett,* 10 N. H. 338. As Jacobs' L. Dic. has it, citing ancient authorties: " If a thing which a plaintiff ought to have entered himself, being a matter of substance, is wholly omitted, this shall not be amended, but otherwise it is, if omitted only in part and misentered." The reason of it is that it appears, from what is described, what was intended to be described. *Warren* v. *Ocean Ins. Co.,* 16 Maine, 439. The nature of the cause of action was not changed. *Rand* v. *Webber,* 64 Maine, 191, has been erroneously supposed to allow an amendment to the extent of allowing the nature of the action to be changed. That case merely allowed a correction of the writ, already improvidently and improperly amended, that such a result might be avoided.

The surety, the defendant defending, desired to place before the jury a quantity of papers to exhibit a practice of the principal party to the note, the alleged forger, in the matter of forging signatures of notes. So far as they were excluded, we think the

exclusion was right. They were inadmissible for the same reason that it is not a defense to one note that the person who presents it has forged another note, or that his general character is bad. They were not introduced to show his ability to write, but that he was in the practice of forging, making preparations therefor. So far as the papers were admitted, presenting similitudes of the note, or some part of the note in suit, the admission was proper.

We are of the opinion that the court correctly allowed the plaintiff to show that he took the note in question in payment of a similar note between the same parties. It may be a matter of but slight importance; still, as bearing upon motive and the probabilities, we think the jury had a right to consider the fact.

This brings us to a point where the exceptions must be sustained. And that is the implied ruling that, if the first note was genuine, the jury need not consider any question of alteration as far as the second note is concerned. So apparent is it that this instruction is erroneous, it would seem that it might have been merely an unfinished expression. But, upon careful examination, we do not see how the result of a new trial on that account can be avoided.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.

LIBBEY, J., having been formerly of counsel, did not sit.