BROWN, ADMINISTRATOR, v. TOURTELOTTE, EXECUTOR.

1. LAW OF THE CASE.
A decision by the court of appeals in a case the final decision of which
     may ultimately rest with the supreme court does not constitute the
     law of the case, although it may not have been reviewable in the
     first instance upon appeal to or writ of error.

2. SAME.
The doctrine that the law of the case as announced by an appellate court
     is conclusive in subsequent proceeding does not apply to the deci-
     sions of intermediate courts, but only to appellate tribunals which
     are also courts of the last resort.

3. EVIDENCE—RELEVANCY.
Testimony which would have a tendency, however remote, to establish
     the probability or improbability of a fact in issue, is relevant.

4. SAME—CONTRADICTION OF WITNESS.
A party calling a witness is not precluded from proving the truth of
     any particular fact in direct contradiction to the testimony of such
     witness, even where it may collaterally have the effect of showing
     that the witness was generally unworthy of belief.

5. BURDEN OF PROOF.
A sworn answer denying the execution of the note sued on casts the
     burden of proving its execution upon the plaintiff, and the fact that
     such denial is followed by an allegation that the note was forged
     does not change the rule.

6. QUANTUM OF PROOF, WHERE A CRIME IS CHARGED.
A fact in issue in a civil action is to be determined from the prepon-
     derance of the evidence, notwithstanding the fact alleged may
     impute a crime.

*Error to the District Court of Arapahoe County.*

Mr. S. E. BROWNE, Mr. T. M. PATTERSON and Mr. H. N.
HAWKINS, for plaintiff in error.

Mr. GEORGE Q. RICHMOND, Mr. W. T. HUGHES and Mr.
GEORGE N. HURD, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

On December 31, 1889, L. C. Rockwell, as attorney for
Monroe M. Tourtelotte, served notice on the plaintiff in

error, administrator of the estate of Francina Hawkins, deceased, that he would on January 13, 1890, present to the county court of Arapahoe county for allowance against her estate a certain note, of which the following is a copy :

"DENVER, July 30, 1887.

" In consideration of the payment of three hundred dollars in cash, the receipt whereof is hereby acknowledged, and other good and valuable considerations, I promise to pay Maggie A. Hurd the sum of eight thousand dollars, thirty months after date, with interest at eight per cent. per annum from date until paid, interest payable every six months, or to be compounded.

(Signed)

" FRANCINA HAWKINS."

On the back of the note were the following indorsements :
" Pay to Steele & Malone or order.   Maggie A. Hurd.
" Pay to John F. Tourtelotte or order.   Steele & Malone.
" Pay to M. L. Tourtelotte or order.   Jno. F. Tourtelotte."
. The allowance of the note was successfully resisted in the county court upon the following grounds :

*First.* That the note was not the act and deed of Francina Hawkins, and that she did not execute it.

*Second.* That the note was not transferred by the payee, Maggie A. Hurd, to any of the indorsees and subsequent holders thereof in the usual and ordinary course of business, nor for a valuable consideration ; and that the note, if it was ever executed by Francina Hawkins, was wholly without consideration.

*Third.* That before the commencement of this action, and while the note was in the possession of Steele & Malone, it was filed as a claim against the estate of the decedent, and judgment rendered thereon in the county court.   Thereupon the cause was appealed to the district court, and a jury impaneled to try the cause.   After the evidence had been received, and the district court was about to charge the jury, Steele & Malone, under section 166 of the Civil Code of 1887

abandoned the case and the court entered a judgment of non-suit and for costs; and that such adjudication forever barred said Steele & Malone, and all subsequent holders, by transfer or otherwise, of said note, from any recovery.

On appeal to the district court substantially the same defenses were presented. The district court sustained a demurrer to the plea of former adjudication set out in the third defense. Issues were joined on the remaining defenses, and a trial to a jury had on October 17, 1890, which resulted in a general verdict for defendant. At claimant's request, the court also submitted the following for a special finding :

" Was the name of Francina Hawkins at the end of the note forged? " To this the answer was returned: " Jury cannot agree." Judgment was thereupon rendered for defendant. This judgment was reversed by the court of appeals, and the cause remanded for trial *de novo*, for the reasons set forth in an opinion published in 1 Colo. Ct. App. 408, among them, because of the failure of the jury to find upon the issue of forgery; and because upon the issue of the *bona fides* of plaintiff's purchase, the finding of the jury was absolutely unsupported by any testimony.

On April 13, 1892, the case was again tried in the district court, and resulted in a verdict and judgment for defendant. This judgment was also reversed by the court of appeals (4 Colo. Ct. App. 377) because the evidence was insufficient to support the verdict upon the issue of forgery; and also because of the introduction of testimony upon, and the consideration by the jury again of, the issue touching the *bona fides* of the transfer of the note, an issue that the court held had been determined upon the former review.

On June 6, 1894, the cause was tried a third time, and verdict rendered for plaintiff for $13,000, and judgment entered thereon for that amount. To reverse this judgment the present writ of error is prosecuted.

From the record before us it appears that upon the last trial the evidence was restricted to the sole issue of the genuineness of the signature of the note in controversy, and all

testimony offered on the question of the *bona fides* of the
purchase of the note by plaintiff was excluded. These, among
other rulings, are relied on for a reversal of the judgment.
It is insisted by defendant in error that this action of the
court was not only justified, but compelled by the decision
of the court of appeals, because by those decisions the ques-
tion of the good faith of the transfer of the note had been
determined in favor of plaintiff; and by the "law of the
case" as announced therein, that issue was *res adjudicata,*
and no longer open to inquiry unless some new and addi-
tional evidence was produced which differed in substance
and effect from that introduced on the former trial.

In his opening statement, at the last trial, counsel for
plaintiff requested that counsel for defendant be required to
state explicitly, or indicate in some manner satisfactory to
the court, whether they proposed to offer any proof different
in substance and effect to that introduced at the two preced-
ing trials, or if the case would be tried by them on another
and different theory; and gave notice that unless other and
new evidence was offered, or unless such statement was made
to the court, they would ask to exclude the identical evi-
dence, or any part thereof, which was offered at the preced-
ing trials. They now insist that, defendant's counsel failing
to avow such purpose, or indicate that they intended to try
the cause upon any other or different theory than that adopted
at the prior trials, the court properly excluded all the evi-
dence offered upon this issue.

On the other hand, counsel for plaintiff in error contend
that, the court of appeals having remanded the cause for a
trial *de novo,* both issues were again before the court for trial,
notwithstanding the court decided that the evidence adduced
upon the first trial was clear, conclusive and uncontradicted
that the plaintiff purchased the note for a valuable consider-
ation, and without notice or knowledge of any fact that would
invalidate it. Furthermore, they contend that the decisions
rendered by the court of appeals do not settle the law of the
case for this court on this review, since that court is inferior

to, and subject to the supervision of, this court. Upon the former consideration of the case we did not agree with this last contention; and in our original opinion we based our conclusions entirely upon the ground that the decisions of the court of appeals rendered upon two former appeals to that court, settled the law of this case. A further investigation satisfies us that we carried that doctrine too far in holding that the law, as announced by that court, was binding upon us, and that we were precluded from examining into the correctness upon this review. While we still adhere to the doctrine of the law of the case as approved in our former decisions, we think that under our present judicial system, that doctrine does not apply to decisions of the court of appeals in cases where their final determination may ultimately rest with the supreme court; although such decisions may be rendered in cases where in the first instance no appeal to or writ of error from this court will lie to its judgments.

In reviewing cases brought here directly from the court of appeals, it is concededly within our province to disregard the reasoning and conclusions of that court, except in so far as they are in conformity with our views as to the law applicable to the question involved; and we can perceive no good reason why they should be any more binding upon us if given in support of a judgment of reversal, when by reason of a different judgment rendered upon a retrial, the case is thus indirectly brought before us for consideration. In other words, it seems to us illogical to hold that the decision of an intermediate and subordinate court, simply by reason of this rule, becomes the law for the supreme court in a case of which it has final jurisdiction. The decided cases are conflicting upon the question as to whether or not the decision of an intermediate court becomes the law of the case for that court even. It was held in *Jungk v. Reed*, 12 Utah, 196, that a decision of the supreme court of the territory rendered upon a former appeal did not become the law of the case, because the amount involved, being in excess of $5,000, the supreme court of the United States was the court

of last resort, holding that the doctrine of the law of the case does not apply to decisions of an intermediate court, but only to decisions of appellate tribunals, which are also courts of last resort. But the subsequent case of *Silva v. Pickard*, 47 Pac. Rep. (Utah) 144, overruled the former decision, without referring to it; and there it was held that a decision of the supreme court of the territory of Utah is *res adjudicata;* and that the questions therein adjudicated were binding, and would not be reviewed upon subsequent appeal, although the amount involved being over $5,000, the case might have been taken to the supreme court of the United States. The appellant not having availed himself of his right to appeal to a higher court, the decision of the court where he saw fit to rest, became a final one within the meaning of the rule.

The weight of authority seems to favor the latter view. Upon the further proposition as to whether the law as announced by the intermediate court is controlling on a subsequent appeal to the supreme court, there is also a conflict in the few cases that have passed upon that question. In *Henning v. Eldridge*, 146 Ill. 305, it was held that where a judgment of reversal and remandment by the appellate court that in effect covered the merits of the controversy, and the action of the lower court was in conformity with its mandate, that that court being concluded upon another appeal by its former final adjudication, the supreme court was likewise concluded upon a subsequent appeal to that court. To the same effect is the case of *Lackland v. Smith*, 75 Mo. 307; while in the subsequent case of *Board of Trade v. Nelson*, 162 Ill. 431, it was held that a decision of the appellate court reversing a judgment of the superior court of Cook county sustaining a demurrer to a petition for a writ of mandamus and remanding the cause, was not binding authority in the supreme court upon a subsequent appeal, basing its conclusion upon the ground that such a judgment being that of reversal, was not final, and did not conclude the parties.

*Seidenbach v. Riley*, 111 N. Y. Ct. App. 560, was a case that had been tried twice. On the first trial a verdict was directed in favor of defendant. Upon appeal to the general term this judgment was reversed. The second trial resulted in a verdict and judgment in favor of defendant, which upon appeal was affirmed. On an appeal from this judgment to the court of appeals Earl, Justice, who delivered the opinion of the court, said:

" The plaintiff's counsel makes the singular claim that the decision rendered by the general term upon the first appeal was *res adjudicata* between the parties, and was therefore binding and conclusive upon them in all the subsequent litigation, even in this court; that decision did not result in any judgment, and all that was decided thereby was that the verdict ought not to have been directed, and that the case should have been submitted to the jury. What was said in the opinion did not bind any one, not even the judge who wrote it. Every question of law raised in the court below appearing in the record can therefore be considered here as if the decision of the general term which is now under review had been rendered upon a first appeal."

The judgments of the court of appeals in the case before us lack the element of finality that seems to have been the controlling feature in the first two cases of those last above cited; and are also unlike the other two in that, while they reverse and remand the case for trial *de novo*, the court by its opinions in effect eliminated one of the issues, and determined the law which should control the district court on the retrial of the other. The adjudged cases, therefore, afford us but little aid in determining the rule applicable to this case. However, in its general features we think it is more like the case of *Board of Trade v. Nelson*, *supra*, than the others; and the doctrine of that case sustains our view that the principles announced by the court of appeals in reversing a case that may ultimately reach the supreme court for final adjudication, do not constitute the law of the case so far as this court is concerned; and that on the subsequent review

of the case here, it is not only our privilege, but our duty, when the record is properly before us, to investigate the questions presented, and determine them upon their merits, whether our conclusions differ from, or coincide with, those reached by the court of appeals.   This brings us to a consideration of the objections urged against the rulings of the trial court excluding evidence upon the question whether plaintiff was a purchaser of the note in good faith and for value.   We find these rulings to be in accord with the views expressed by the court of appeals; and that they are distinctly based upon the ground that that court had eliminated this issue from the case.   Without the bill of exceptions before us that contained the evidence passed on by the court of appeals, we cannot say whether it was correctly held that the finding of the jury upon this issue was unsupported by any testimony, and manifestly against the uncontradicted evidence; and since that court was clearly authorized in the exercise of its appellate jurisdiction to determine that question, we would have to assume that its conclusion was correct.   In view, however of the contention of counsel and the importance of the case, we have examined the evidence upon this question, as the same is disclosed in the record presented to the court of appeals, and find that it unquestionably justifies its conclusion that:

"The evidence, clear, conclusive and uncontradicted, is that John F. Tourtelotte bought the note for $9,200, and paid for it— that he had no knowledge of the litigation concerning it, or of any fact that would invalidate it.   It was also proved and uncontradicted that plaintiff bought the note from his son, paying $9,700, for it; that he was a non-resident —did not see the note, and the delivery took place by endorsing it and its being handed to plaintiff's attorney; both bought the note before its maturity. * * * There was absolutely no testimony to show that the plaintiff was not a *bona fide* holder for value.   All the testimony upon the transaction was in favor of its regularity and legality.   There was no testimony to overcome the legal presumption, or to cast a suspicion upon it."

These statements we think are fully borne out by the testimony referred to. We can find no testimony offered that tended to contradict the positive statement of John F. Tourtelotte that he and his father paid the amounts stated for the note. The circumstances surrounding the transaction were clearly insufficient to show bad faith on their part in making these purchases, or defeat the title acquired thereby, even if it be conceded that they were sufficient to excite suspicion that the title of the prior holders of the note was defective. That this is the rule adopted in this state, and generally accepted by the courts of England and this country, is shown by the authorities cited by the writer of the opinion of the court of appeals.

We think, therefore, the court of appeals having correctly determined this issue, that the same was *res adjudicata* between the parties upon all future trials, unless additional evidence should be produced that was materially different from that originally offered upon that issue; and which could fairly be regarded as giving a new aspect to this feature of the case, and would justify a deduction different from that reached by the court of appeals on the evidence introduced upon the former trial. Whether the court, by this decision, did settle and eliminate this question from further consideration, as it manifestly intended to do, or by remanding the cause for trial *de novo*, left the issue open on the subsequent trials, is of no moment, since such new and additional evidence was not offered. Hence, if the trial court erred in excluding the testimony introduced upon the former trial, such error in no way prejudiced the rights of defendant.

It is contended, however, by counsel for plaintiff in error, that they did upon the last trial offer new and substantial testimony bearing on this issue. We have carefully examined this record, in connection with the evidence contained in both of the records before the court of appeals, for the purpose of ascertaining whether any such evidence was offered, and we fail to discover any. By this examination we find that the evidence excluded was in regard to matters

sought to be inquired into on cross-examination of certain witnesses who had testified fully in relation thereto upon the former trials; and which tended in no way to establish or contradict any fact disclosed by the records passed upon by the court of appeals. In other words, the inquiry, if permitted, would have resulted merely in the re-examination of the same witnesses, upon the same matters they had testified to on the two preceding trials.

We find no instance where the court excluded any evidence properly offered that could fairly be said to constitute proof of any new fact bearing on this issue. The only testimony of that character tendered was that of the witness Hurd, to the effect that he paid the plaintiff's attorneys and took an active interest in the prosecution of the case. This testimony was admitted, but upon objection being interposed to this line of inquiry, counsel for plaintiff stated that their purpose was to prove a conspiracy, and that the note was not really the property of Tourtelotte, but still the property of Hurd and his wife, as evidenced by the fact that he was hiring and paying the lawyers.

"The court: If that is the purpose it may be sustained. That has all been settled long ago, and there is but one question here to try, the question of forgery."

Without pursuing this subject further, suffice it to say we find no proof of, or a proper offer to prove, any fact which could reasonably have any material bearing upon the *bona fides* of the plaintiff's ownership of the note, that was not disclosed in the former records. Therefore we think that the court below properly excluded the evidence offered upon that issue, and withdrew all questions from the consideration of the jury except that of forgery.

Upon this branch of the case there are presented for our consideration certain rulings of the court below, excluding· and admitting testimony, and upon the giving of certain instructions. The rulings and instructions complained of · are in conformity with the views expressed in the decision of the court of appeals rendered upon the second appeal. The

principal specification is predicated upon the exclusion of the testimony of A. C. Mansfield, Mary C. Mansfield and Nancy Pickard, to the effect that Francina Hawkins was at Mansfield's house, a number of miles from Denver, on the 30, day of July, 1887, and not at the residence of the witness Hurd, where he testified the note was signed by her on that day. This evidence was admitted upon the second trial, and together with other evidence upon the question of forgery, was set out in the record and discussed and considered by the court of appeals in its second opinion. After referring somewhat in detail to the evidence of the respective parties upon the question of forgery, the court says :

" This brings us to the main defense relied upon, an *alibi* on the part of Mrs. Hawkins on the day the note bears date and the day Mr. Hurd testified she executed it at his house in the afternoon, by attempting to show that she was at the house of Mr. Mansfield, seven or eight miles in the country, from the day preceding until two days afterwards. But a very brief review of the testimony upon the point can be had, or is deemed necessary. Mrs. Hawkins was the foster mother of Mansfield. His testimony and that of his wife was that Mrs. Hawkins visited them frequently during the summer of 1887. Two and a half years afterwards this case came on for trial ; then the note in question was examined, and the attempt made to establish the fact of Mrs. Hawkins having been at their house on the day the note bore date, and thus, inferentially discredit it, not by showing that Mrs. Hawkins did not execute the note, but by showing that she did not do it on the day testified to by Hurd ; thus by establishing a collateral fact in connection with the date, attempting to establish the forgery. * * * Allowing all these collateral facts to have been properly established, which they were not, they could have no bearing upon the question of the genuineness of the signature, would only show that it was not executed on the day of its date."

And in conclusion held that this testimony at most raised only a presumption or suspicion from which the forgery of

the note might be inferred, and pronounced it utterly insuf-
ficient to overthrow the evidence of the plaintiff.   The court
below ruled that these expressions of the court of appeals
settled the question as to the inadmissibility of this testi-
mony, and excluded it from the jury.   While it may be true,
as stated by the court of appeals, that this evidence alone
" could not establish the forgery," it certainly went too far
in saying that it could have no bearing upon the question
of the genuineness of the signature.   Nor do we think, in
the light of the other reasons given for reversing the judg-
ment, and the fact that the cause was remanded for trial
*de novo* because the court was of the opinion that this issue
had not been fairly submitted to, and determined by, the
jury, that it intended to hold that this testimony was wholly
irrelevant and immaterial, and inadmissible upon a subse-
quent trial.

That it was relevant to the question at issue seems to us
to admit of no controversy.   If it was a fact that the alleged
maker of the note was not present at the time and place it
is claimed she signed it, that is a circumstance which was
both relevant and material, under the theory of the defense.
*Davis v. Hopkins*, 18 Colo. 153; *Nickerson v. Gould*, 82 Me.
512; *Hunter v. Harris*, 24 Ill. App. 637; *Trull v. True*, 33
Me. 367.

As was said in *Trull v. True, supra :* " Testimony cannot
be excluded as irrelevant, which would have a tendency,
however remote, to establish the probability, or improbabil-
ity of the fact in controversy."

A further objection to the admissibility of this testimony
is based upon the fact that it tended, or was intended, to
discredit the evidence of Nathan S. Hurd, who was called
by and examined on behalf of defendant; and hence inad-
missible under the rule that a party who offers a witness,
and thereby represents him as worthy of belief, may not
afterwards impugn his credibility by evidence tending to
show him unworthy of belief.   This claim is without merit.
As was said in *Moffatt v. Tenney*, 17 Colo. 189 :

"A party calling a witness is not precluded from proving the truth of any particular fact by any other competent evidence in direct contradiction to what such witness may have testified, and this, not only when it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief."

Upon the two former trials Hurd was called by plaintiff and testified that the note was signed by Mrs. Hawkins in his presence, at a certain time and place. The defendant then introduced these witnesses, who swore that Mrs. Hawkins was at the time at another place than that designated by him. At the last trial Hurd was present in the court room, but plaintiff did not call him, thereby depriving defendant of the evidence necessary to render the testimony of these witnesses material upon the issue involved; its materiality consisting in the fact that Mrs. Hawkins was not at the place on the day that plaintiff claimed the note was executed. The defendant was therefore compelled to call him in to show the time and place at which plaintiff claimed Mrs. Hawkins affixed her signature to the note; and we think, having fixed such time and place, it was competent for the defendant to show that she was not at that place at that time, if he could do so.

Our conclusion is that the defendant was clearly entitled to have this testimony submitted with the other evidence in the case, and have the jury determine its weight and materiality; and the court committed an error in excluding it. Error is also assigned upon the giving of the following instructions:

"The court instructs the jury that the question of forgery is an issue raised by the defence; that the burden of proof of forgery devolves upon the defendant; and unless this is proved by a preponderance of evidence, you shall find for the plaintiff.

"The legal presumption is in favor of the authenticity of the paper in question and the genuineness of the signature.

In the absence of evidence to the contrary, honest and fair dealings in all transactions are always presumed, and if any person claims that there is fraud in a transaction, it devolves upon such person to prove the fraud, and it does not devolve upon the party charged with committing the fraud to prove the transaction was honest and *bona fide*.

"The evidence of fraud, in order to affect the execution of an instrument and establish the forgery as it is claimed, must be clear, strong, satisfactory evidence. Nothing less than clearly satisfactory evidence should be permitted to defeat the note, and unless you are convinced to your satisfaction by such kind and class of testimony that this note is a forgery, you should find for the plaintiff."

The court of appeals, speaking upon this subject, say:

"The defense and allegation contained in the answer is as follows: 'Because the said note is not the act and deed of said Francina Hawkins, and she did not execute the same; and said note is a forgery.' The defendant had the affirmative of this issue, and having alleged the fraud and forgery was bound to establish it by a preponderance of competent evidence. The legal presumption was in favor of the regularity and authenticity of the paper."

Again: "In a case of the magnitude of this, and where the result is so serious as to morally convict a party of crime, the evidence establishing the forgery must be competent and all that is legally required. It must be satisfactory in every respect. Nothing less than clearly satisfactory evidence should be permitted to defeat the note and place upon the witness Hurd the obloquy of crime."

It will be seen that the instructions state the rule upon both propositions in substantially the same language. The specifications, therefore, virtually challenge the correctness of the law as declared by the court of appeals, and present for our consideration and determination the question, whether or not that court announced the correct rule upon these propositions. After mature deliberation we are convinced that, in placing the burden of proof upon the defend-

ant, and in stating the character and quantum of proof necessary to meet that burden, its views are at variance with the settled law of evidence upon this subject. We think it has been uniformly held that in an action upon a promissory note, the sworn answer of defendant denying its execution, casts the burden of proving its execution upon the plaintiff; and that this rule is not changed by following such denial by affirmative allegation that the note was forged. Such allegation is mere redundancy, since the fact of the forgery was put in issue by, and might have been proven under, the general denial. In *Farmers' Loan & Trust Co. v. Siefke*, 144 N. Y. Ct. App. 354, Andrews, C. J., speaking upon this subject, says:

"In actions upon a promissory note this burden is in the first instance discharged by giving evidence tending to show that the note was signed by the defendant. * * * This *prima facie* establishes the cause of action. But a defendant is not concluded. He may give evidence, under a general denial, to show that the signature is a forgery, or that the note had been materially altered by the plaintiff without his consent, or many other things which might be mentioned, showing that the plaintiff never had a cause of action."

The cases cited and relied on by the court of appeals as supporting its conclusions, on examination will be found to be cases brought to set aside fraudulent conveyances and other executed instruments under seal, or where fraud was relied on as the ground of recovery, and are controlled by a different principle than that regulating the burden of proof in actions on negotiable instruments, where their execution is properly put in issue. Among the many cases showing this distinction, see *Farmers' Loan & Trust Co. v. Siefke, supra; Lothrop v. Union Bank*, 16 Colo. 257; *Edmonston v. Henry*, 45 Mo. App. 346; *Feurt v. Ambrose*, 34 Mo. App. 360; *Dodge v. Haskell*, 69 Me. 429; *Smith v. Ehnert*, 47 Wis. 479; *Pate v. First Nat. Bank*, 63 Ind. 254; *Bates v. Hunt*, 1 Blackford, 67; *James v. Rand*, 43 La. Ann. 179; *Cawood's Adm'r v. Lee*, 32 Ind. 44; *Smith v. King*, 88 Ia. 105; *Monitor Plow Works v. Born*, 51 N. W. Rep. 129;

*Holmes v. Riley*, 14 Kansas, 131; *Assig v. Pearsons*, 9 Colo. 587.

But it is insisted by counsel for defendant in error that plaintiff in error, having asked in his eighth request for an instruction announcing the same rule as to the burden of proof that was given in the foregoing instructions, he is now estopped from asserting that it is erroneous. While this is true, and he may not now avail himself of the objection urged upon this ground, yet we think that he has a right to complain of the instructions given in so far as they defined the character and quantum of proof requisite to meet that burden.

If it be assumed, contrary to the views we have expressed, that the allegation of forgery raised an affirmative issue that devolved the burden of proof upon the defendant, nevertheless the court erred in defining the amount of proof necessary to establish it. The great weight of modern authority is in favor of the rule that where a crime is imputed in a civil action, its existence may be proved by such evidence as would suffice to prove any other fact involved. That is, "the result should follow the preponderance of evidence." 2 Wharton on Evidence, § 1246, and cases cited.

Upon the cross-examination of the witness Pickard, counsel were permitted to present two receipts signed by him, the signatures of which, having been identified as his, were introduced in evidence for the purpose of showing a variance between them; and used this circumstance before the jury as evidence that the handwriting of Francina Hawkins varied, and the witness might be mistaken in identifying her signature. We are unable to see how a dissimilarity between the signatures of the witness would tend to show a like difference in the signatures of Mrs. Hawkins; and we think these receipts were clearly inadmissible for that or any other purpose.

For the foregoing reasons the judgment is reversed, and the cause remanded for a new trial of the issue as to the genuineness of the signature to the note in question, in conformity with the views we have expressed.

*Reversed.*