[No. 1783.]

## WHEELER v. MAYHER ET AL.

1. PRACTICE—JUDGMENTS—PLEADING—PROOF.

In an action against a trustee for converting trust funds, it was error to
enter a decree for a greater amount than the *ad damnum* of the com-
plaint. It was also error to enter a decree for more than was shown
to have been converted by the proof.

2. PRACTICE—JUDGMENTS.

In an action against a trustee for converting trust funds, where at the
close of the trial counsel for plaintiff asked for judgment in a cer-
tain sum, which was granted, it was error to afterwards enter a
judgment for a larger sum.

3. PRACTICE—PLEADING—EVIDENCE—GENERAL DENIAL—PAYMENT.

In an action against a trustee for money belonging to a trust fund al-
leged to have been received and converted by the trustee, the de-
fendant was not required to plead payment before he could show
what moneys he had paid over under the terms of the trust, but
such evidence was admissible under a general denial.

*Error to the District Court of Weld County.*

Mr. JAMES E. GARRIGUES, for plaintiffs in error.

Messrs. PATTON & ESTEB and Messrs. FELKER & DAY-
TON, for defendants in error.

BISSELL, P. J.

The sole question to which counsel have addressed them-
selves in their argument respects the proof which may be
made under a general denial. The appeal will be made to
turn on a different consideration, and we shall only discuss
or decide one phase of the scope of a general denial and the
proof properly admissible under it. We do not care to un-
dertake to lay down the general rule. It is a very debatable
matter on which courts might easily disagree and support
their conclusions by arguments of apparently equal force and

we prefer to await the determination of the supreme court when the question is one of such universal interest. If it was necessary we should not attempt to avoid it, but since the appeal is resolvable on other considerations and we shall order a repleader, we feel quite at liberty to omit the discussion or any other decision of the matter than that which appears in the opinion.

In stating the complaint and the evidence, we shall go no further than is required to clearly exhibit the controversy. Prior to 1893 the Greeley Electric Light Company was indebted to Warren Currier or his estate in a considerable sum. The corporation was likewise indebted to some of the banks in Greeley in a further amount. To secure these debts the corporation executed mortgages on real estate, on the plant, and on sundry chattels. There was a foreclosure of these securities but the sale left about $11,000 unpaid of which different portions were due to the different parties. The complaint set up the corporate character of the light company, the interest of Currier and his estate, the title which passed to the purchasers and the relations which Gale and Charles H. Wheeler, who is one of the defendants, sustained to the light company and to the creditors. All matters of record were admitted. After the sale the light company attempted to make some provision for the payment of the interest on $11,000 and to provide a fund for its ultimate liquidation. To this end the company acting in its corporate capacity on the 1st of September, 1893, executed to Gale a written authority, substantially providing that for a valuable consideration the company assigned and transferred to him $175 per month of the money due it monthly from the city of Greeley for arc lights, and authorized him to receive and receipt for it. The transfer provided that the money when collected should be first used to pay the interest on the loan from the Currier estate and on the loan held by Smith as trustee, and the balance, if any should be, put in a sinking fund to pay the principal of the loans. Gale died and it became necessary to appoint a substitute. Just exactly what was

done with reference to this matter is not very clear, and we are unable to state whether the corporation acting as such appointed another trustee.   Whether this be or be not true, in March, 1895, the president executed another instrument exactly similar in terms to the one antecedently given to Gale, wherein Chas. H. Wheeler, one of the defendants, was named as trustee.   There was nothing to show that the corporation as an entity or acting by the authority of its board of directors executed this paper.   Whether thereby Wheeler would have acquired title had the corporation objected to the execution of the authority conferred, we need not determine; nor are we called on to decide whether Wheeler could have been compelled to act, nor whether thereby any obligation was imposed on him.   It is enough to say that after the instrument was executed by the president it was left with the treasurer of the municipality who upon its authority issued most of the warrants for monthly payments for lights furnished the city in the name of Wheeler as trustee to the knowledge of the corporation.   These warrants appear to have been drawn regularly, were put in a pocketbook used for this purpose and taken therefrom by the manager of the corporation, and ultimately turned over to the Greeley National Bank of which Wheeler was the cashier.   After indorsement by the corporation they were placed to its credit in the bank. It does not appear whether Wheeler ever indorsed them or what he did about them.   Wheeler's testimony shows, though whether it be true or not we do not decide, that he applied much of the funds represented by them to the liquidation of the claim due the Currier estate and the claims due his own bank and the Union Bank of Greeley.   The complaint sets up that $755 of this money was paid over to the Greeley National Bank contrary to the terms of the assignment and trust, and that the balance, amounting as stated to $2,100, had been converted by Wheeler to his own use and had not been applied to the liquidation either of the principal or the interest of the claims.   The defendant answered by general denial save as to particular admissions of corporate capacity,

etc., intending thereby to take issue on the allegations of the complaint which alleged the creation of the trust, the receipt of the money and its misappropriation and conversion. When the case came to trial the plaintiffs attempted to maintain their cause of action by the production of the assignment to Wheeler and the various warrants issued by the city and payable to the order of Wheeler as trustee. These we state generally without intending to be exactly accurate. They were about twenty-one. In eighteen or thereabouts Wheeler was named as payee and trustee, but in the other three the light company was the payee. All of them went into the account of the company in the bank. The plaintiffs did not attempt to show any misappropriation by Wheeler, nor any direct conversion, nor as we read the record did they prove that nothing had been received by the Currier estate or by Smith as trustee for the other creditors. The plaintiffs relied on proof of the receipt of the money and left it for the defendants to show what had been done with the money and whether any of it had been paid. According to the warrants produced, the total sum received by Wheeler was about $5,000, nearly twice what the plaintiffs alleged was due, and nearly twice as much as they alleged the Bank of Greeley and Wheeler had received and converted. It must be stated the plaintiffs alleged that $755 had been paid to the Greeley National Bank contrary to the terms of the trust, and that the bank was bound to repay it, having received it with notice of the trust. There was no proof of this notice otherwise than as to the presumption deducible from the fact that Wheeler as its cashier handled the fund and was the transferee, if such he was, by the instrument executed by Thompson. At the trial it was conceded $755 had gone to the Greeley Bank at a date named. When it came to the defense, the defendants undertook to prove the circumstances under which the trust was created, contending all the while the instrument did not express the true trust as they term it, but that if any was created it was the result of a conversation between Currier and Wheeler who undertook to handle the

funds and distribute them in a certain way. Then it also attempted to show the exact amount of money which had come into Wheeler's possession and the manner in which it had been paid out and distributed. All this was objected to on the theory that since the defendants had only denied generally they could offer no such proof, being bound to plead affirmatively the special facts constituting their defense and set up payment if they would establish it to reduce the plaintiffs' claim. From this statement the difficulty of the proposition is quite apparent. The reason which influences the court to decline to decide the proposition in its entirety will further appear when we state the history of the trial. The court refused to permit the defendants to show this conversation, or to show the terms of the trust because they had pleaded nothing concerning it. We do not intend to decide the question because it is an exceedingly close one, and the court may have been measurably right though it was partially wrong. When the case goes back, the district court will direct a repleader. The defendants will then if they be so advised set up what they concede to be the truth respecting the creation of the trust, pleading such facts as they may be advised and this whole difficulty will be avoided. The court can on that answer determine whether or not what he pleads constitutes a good defense. There will necessarily remain for the decision of the court dependent on the plea, the further question whether if the defendant concedes the appointment he is not bound as a voluntary trustee, since he undertook to carry out the agreement and might thereby become bound to perform the duties which he voluntarily assumed. We feel quite certain it would not lie with Wheeler to contest his duty or his obligation if he voluntarily undertook to execute the terms of the written appointment, and all parties in interest accepted that as his obligation. We are quite inclined to the opinion Wheeler would be bound to carry it out according to its terms because of his voluntary assumption of duty. If it should appear that thereafter money came into his hands, he would probably be bound to see to its proper ap-

plication. We do not intend to decide that any duty was laid on Wheeler to collect the fund by litigation or otherwise, but if the fund came into his hands under such circumstances that he had power to control it, he was bound to retain it and apply it according to the terms of the assignment. It is unnecessary nor are we able under the case as it appears in the record to do more than state these general propositions.

We will now come to the troublesome matter in the case and that which compels the reversal of the decree. When the defense put Wheeler on the stand they attempted to show the amount of money which he had received, the sums which he had paid out and the parties to whom he had paid it, and thereby establish that he had measurably at least performed his duty, and to the extent of the performance must be discharged. We quite agree. The court likewise agreed with counsel, but the interlocutory discussion in the record shows the court lost sight of this in its ultimate finding. The defendant had a right to show the actual amount of money received under the trust, and how much he had paid out according to its terms. The court was doubtless right about it, but the error which it committed was in refusing to permit this to be done, or in disregarding the proof which the defendant made and which was not overcome. In response to inquiries Wheeler testified that he had received $2,507.90 of the fund. His counsel, however, admitted that he had received $2,707.90, and claimed that Wheeler had paid out $2,381.66, and had on hand $126.24. Pursuing the inquiry Wheeler was asked how much of the funds coming into his hands he had paid out. This was objected to on the theory that the inquiry ought to have been " what should have come into his hands." The court sustained the objection but permitted an answer to the question "how much he had paid out." To this the witness responded, "$3,485.24," which of course is largely more than the sum which he admitted he had received; further answering he admitted he had in his hands $126.24. The witness was then asked whether he paid out whatever came into his hands to discharge either the interest

or the principal of the secured claims.   The plaintiffs objected
on the theory that the evidence showed he had done nothing
of the kind, as he had gotten a large amount of warrants pay-
able to his order as trustee and he could not answer that he
paid it all out but must show the individual payments.   Prob-
ably to this extent the plaintiffs were right.   The inquiry
was not pursued by counsel with an observance of the rules
of evidence respecting the production of testimony, nor were
the inquiries put in the form in which they ought to have
been put to elicit the facts which were the proper subject-mat-
ter of proof.   Barring all this, however, the witness on cross-
examination, after restating that he had paid out $3,485.24,
testified that he had paid the Union Bank, one of the *cestuis
que trust*, $270, to the Currier estate $1,917.29, to the Greeley
National Bank $1,052.50, and further to the Union Bank
$159.   Here the evidence stops in the most abrupt and un-
satisfactory fashion, leaving us entirely in the dark as to the
exact condition of the fund.   Again, if we should concede
that Wheeler was chargeable with the total of all the warrants
which the plaintiffs traced into his hands which were payable
to him as trustee, yet the ultimate judgment is not justified for
two reasons.   In the first place the sum total of the warrants
produced by the plaintiffs payable to Wheeler's order as trus-
tee, does not amount to the sum named in the decree.   The
Greeley National Bank and Wheeler were only chargeable
with the total of what both defendants had received of the
trust fund.   But even this cannot be conceded, because ac-
cording to the case as alleged by the plaintiffs, the trustee
was only bound to receive $175 per month and apply that
amount to the payment of the interest and the principal.   If
we take the eighteen warrants which were payable to Wheeler
as trustee and multiply by 175, the total of what he received
only amounted to $3,150 for which the bank, if liable at all,
was liable for $755, thus leaving a claim against Wheeler,
providing he paid out nothing, for a trifle more than $2,300.
Further trouble appears from the fact that the court permitted
Wheeler to testify about the amount which he had received

under the trust and the amount he had paid out, and thereby it appears and this testimony was totally uncontradicted, that he had paid to the *cestuis que trust*, to wit, the Currier estate, $1,917, to the Union Bank $429, and to the Greeley National Bank $1,052.50. This apparently covered the whole sum which ought to have come into his hands at the rate of $175 per month. We do not intend to decide nor determine the amount he got, the amount he paid out, the regularity and lawfulness of any payments, nor whether these payments ought or ought not to have been proven in reduction of the plaintiffs' claim. The record is too barren of evidence to permit us to do it. Yet it is so evident that he received no such sum as that for which the decree was entered, and it so clearly appears from his own testimony that he had disbursed to the Currier estate nearly $2,000 of the fund, that we must conclude the decree is not sustained by the proof. What we have said about these payments and these claims, is not to be taken as a decision of the matter, or to conclude the court in any wise in making its ultimate finding, but to demonstrate the apparent error which inheres in the decree and for which it must be reversed. But it otherwise appears that the decree is erroneous. This is easily determinable by a reference to its terms. The court made findings and found that Wheeler had received city warrants of a specific amount. Each warrant represented the sum total due from the city for each monthly payment. It gave him no credit for the sums which he testified he had paid out which were not disputed, and then proceeded to enter a decree against the Greeley National Bank for $1,068.68 and against Wheeler for $4,332.14. The complaint only charged the bank with $755 and interest, and Wheeler with $2,100. This was the amount it alleged Wheeler had converted. The decree was therefore entered for more than twice the *ad damnum*. It cannot be sustained because of the difference between the decree and the *ad damnum*, and for the further reason that there is nothing in the plaintiffs' case as laid or proven which entitled them to a decree for that amount of money. Wheeler was not charged, nor could

he be charged for the sum total of the warrants which were payable to him as trustee under the case as the plaintiffs laid it, or under any theory based on the proof.. According to the plaintiffs' case he was only chargeable with $175 a month of the amount due from the city for arc lighting. There is nothing in the record which would make him liable for the face of the warrants.

There is a still further difficulty. It is recited in the bill of exceptions that the foregoing was all the evidence received, and thereupon the plaintiffs' counsel asked for judgment and decree as prayed in the petition for $2,105.08 against Wheeler and $837.54 against the bank. The court ordered the decree be so entered. The defendants' counsel then said: "I thought there was going to be an accounting." The court then stated: "The testimony, as it now stands shows the amount due, if there is anything due, and the decree will be entered as of this time." It then proceeded to enter judgment and decree for more than twice the sum asked. The court had antecedently stated in response to arguments respecting the extent of the proof that the case called for an accounting and that the credits to which the defendants were entitled could be shown. At the conclusion the court stated the evidence, showed the amount that was due; apparently, so far as we can see, proceeding on the hypothesis that the testimony showed the amount that had been paid out and the credits to which Wheeler was entitled, and that the testimony taken together would establish the exact liability. The court, however, disregarded Wheeler's uncontradicted testimony in regard to his payments, and entered a decree for more than the amount asked.

If we should accept the plaintiffs' hypothesis that the bill did seek an accounting and that they might have judgment for all the sums which they had proved, yet we are quite of the opinion it does not lie with counsel on the conclusion of the case which the court treats as an accounting, to insist that he was only entitled to a decree for less than $3,000 and take one for more than $5,000. We are equally clear that

when Wheeler testified that he had paid the Currier estate from the funds which he had gotten from the city, about $2,000, he was entitled to that credit and the recovery should have been diminished by at least that sum.

We now come to the legal inquiry respecting what may be proven under a general denial. Under the case made by the plaintiffs' bill and proof, the defendants were entitled to show that there was no such sum due as the plaintiffs claimed. Evidence might be introduced tending to prove disbursements made under the terms of the trust which had been voluntarily assumed. What is admissible under this plea has, in a limited way, been decided by the supreme court in two cases : *Brown v. Tourtelotte*, 24 Colo. 204; *Teller v. Ferguson*, 24 Colo. 432.

The court held that under a general denial the defendant might prove that the note was a forgery. That where the cause of action was the balance due on an account stated, the defendant might show that the account was due to somebody else, or that the amount alleged was not due in whole or in part, following the case of *Field v. Knapp*, 108 N. Y. 87. As we look at it the present case is totally different from those which hold that where a plaintiff sues on a debt or on a note and the defendant claims payment he must aver it. Here there was no debt in the general sense of the term for which assumpsit would lie, but a fund had been received by one chargeable as a trustee. The plaintiff alleged that he received a certain amount of money which he converted to his own use. It ought to be true that if the defendant is not wholly able to defeat a recovery, he ought to be permitted to reduce it by showing that he had turned over to the *cestuis que trust* a greater or less amount of the funds which he had received. It is in no exact sense a payment, but it is proof of the performance of a trust obligation. When the plaintiffs allege that a certain sum is due under a trust, and the supreme court holds as in the *Teller* case, that he may show the amount is not due the plaintiff, but is due to somebody else, he may also show

that the sum alleged to be due is not due because the plaintiffs have received part of the fund which they claim he has converted. Conversion and misappropriation is really one of the fundamental bases of the plaintiffs' bill and any evidence which tends to show that the defendant has not converted, but has properly applied what came into his hands, would be proof tending to overcome the plaintiffs' case, and certainly ought to be a defense admissible under a general denial. Whether this be or be not true is a matter not really important and essential for us to decide, and we have only referred to it in deference to the arguments of counsel. What we have already said demonstrates that the decree is manifestly wrong and ought not to stand.

Since the case must go back for a new trial, the court is directed to order the defendants to replead. Both sides will then be prepared for the trial of the issues thus framed, and on the incoming of the proof the court can enter the decree which the testimony warrants.

For the reasons expressed this judgment will be reversed and sent back for a new trial in conformity to this opinion.

*Reversed.*